UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEAN TRAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15 CV 936 JMB |
| | ) |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Dean Travis ("Plaintiff") appeals the denial of his application for supplemental security income ("SSI") disability benefits. Because the decision of the Commissioner of Social Security ("Commissioner") is supported by substantial evidence, as discussed below, it is affirmed.[1]

**I.  Procedural and Factual Background**

On January 9, 2012, Plaintiff filed an application for SSI benefits. (Tr. 66)[2] Plaintiff's application was denied, and he then requested a hearing before an administrative law judge ("ALJ"). Plaintiff appeared (with counsel) at the hearing on October 22, 2013. (Tr. 26-58) In a decision dated March 7, 2014, the ALJ found Plaintiff not disabled. (Tr. 11-22) Plaintiff appealed that decision, but the Appeals Council declined review. (Tr. 1) Plaintiff's claim is thus properly before this Court.

Plaintiff is a 34 year-old man who has alleged a variety of physical and mental impairments, including chest and other pain, costochondritis, muscle impairments, headaches, breathing difficulty, anxiety and panic disorder, depression, and attention deficit hyperactivity

---

[1] This case is before the Court for judicial review pursuant to 42 U.S.C. § 405(g), with the consent of the parties under 28 U.S.C. § 636(c).
[2] References to "Tr." are to the administrative record filed by the Commissioner in this matter.

1

disorder. (Tr. 156) On appeal to this Court, Plaintiff focuses primarily on a prior diagnosis of a low IQ score and his alleged anxiety issues. (ECF No. 16 at 5-10)

At his hearing, Plaintiff claimed his days are filled with "panic attack after panic attack," which makes him feel like he is "dying," and prevent him from working. (Tr. 41) Additionally, he claims to suffer from "chest pains," which bring on anxiety attacks, which in turn make the pain get worse. (Tr. 42) During his questioning by the ALJ, though, Plaintiff did not identify his low IQ score as a severe impediment to his ability to work.

Numerous emergency room visits, x-rays, computerized tomography ("CT") scans, and electrocardiogram ("EKG") tests, however, all failed to disclose a cause for Plaintiff's alleged chest pains or other physical ailments, and the tests have all disclosed "normal" findings. (See, e.g., Tr. 227-29, 247, 422, and 565) In a note dated February 25, 2012, one provider opined that Plaintiff's complaints of recurrent chest pain were "completely subjective and not related to any objective findings." (Tr. 427)

On appeal, Plaintiff alleges an alternative theory of disability: intellectual impairment. (See ECF No. 16 at 5-10) (arguing that Plaintiff meets the requirements for Listing 12.05, relating to intellectual impairments) Plaintiff points to IQ testing from late 1993, when he was 12 years old, as evidence supporting his claims. The tests show Plaintiff had a Full Scale IQ score of 73, which was identified as "borderline" intellectually deficient, along with a score of 69 in Performance IQ and 81 in Verbal IQ. (See Tr. 149-51) Plaintiff also points to the fact that, in high school, he was placed in an "Alternative Class," and that his teachers implemented an "Individualized Education Program" to accommodate some learning disabilities. (Tr. 142-48)

Also relevant to his alleged intellectual impairment issue, however, is a report from Plaintiff's school dated June 4, 1997. That report indicated that Plaintiff "functions within

2

normal limits for his age group and IQ scores according [to] the WISC-R."[3]  (Tr. 144)  The report described Plaintiff as "an intelligent young man who decided not to use his educational abilities to pass his academics."  (Id.)  There were "some reading comprehension concerns" and behavior issues, including verbal "abuse" of others, and anger issues.  (Id.)  The report opined that Plaintiff "does not like nor accept authority of any kind."  (Tr. 145)

In his decision, the ALJ ultimately found Plaintiff not disabled under the law.  (Tr. 13-21)  Consistent with answers to interrogatories from a vocational expert ("VE"), the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the requirements of occupations such as a photocopy machine operator, sewing machine operator-semiautomatic, and garment sorter.  (Tr. 21)  In arriving at this decision, the ALJ followed the required five-step inquiry.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the application date.  (Tr. 13)  At step two, the ALJ found Plaintiff had the following severe impairments:  costochondritis, anxiety, and alcohol abuse.  (Id.)  At step three, the ALJ concluded that none of Plaintiff's impairments, either alone or in combination, meets one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

At step four, the ALJ reviewed the entire record and concluded that Plaintiff retained the RFC to "perform medium work as defined in 20 CFR 416.967(c), except that [Plaintiff] is limited to work that does not involve more than occasional interaction with the public."  (Tr. 14)  In arriving at this decision, the ALJ discounted Plaintiff's credibility (to the extent that he claimed more extensive limitations than allowed by the RFC) because of significant evidence of Plaintiff misrepresenting his work status and alcohol use, along with Plaintiff's conservative treatment, and a lack of objective medical evidence indicating limitations.  (Tr. 14-20)

---

[3]     "WISC-R" stands for the Wechsler Intelligence Scale for Children.

3

Also in his decision, the ALJ considered Plaintiff's allegations concerning intellectual impairment, but found them "unpersuasive," because: (1) the testing was conducted when Plaintiff was 12; (2) several of the scores were over the threshold of 70 required for a finding of disability; (3) the reference in the 1997 report to Plaintiff being an "intelligent young man;" and (4) "recent testing suggests that [Plaintiff] scored much higher on [subsequent] intelligence testing." (Tr. 19) Ultimately, the ALJ concluded that Plaintiff "has no intellectual deficit that would impact more than minimally on his ability to engage in a wide range of work." (Id.)

The ALJ then considered whether Plaintiff could perform his previous work as a concrete worker. (Tr. 20) The ALJ found that—although the VE thought Plaintiff could perform his past work—the best course of action was to proceed to step five. (Id.) There, as noted above, the ALJ found that jobs exist in the national economy that Plaintiff can still perform, such as photocopy machine operator, sewing machine operator-semiautomatic, and garment sorter. (Tr. 21) Therefore, the ALJ found that Plaintiff was not disabled under the law since the date of his application. (Id.)

## II.   Issues Before the Court

The general issue is whether the Commissioner's decision denying benefits is supported by substantial evidence. In particular, the parties dispute: (1) whether Plaintiff meets the requirements for Listing 12.05C; and (2) whether sufficient medical evidence supports the Commissioner's RFC finding.

## III.   Standard of Review

"To be eligible for SSI benefits, [Plaintiff] must prove that [he] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to

4

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During this process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record

5

as a whole.  See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  Id.  Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV. Discussion

The issues before the Court are noted above. After a careful review of the record, the Court finds that: (1) the ALJ's decision is supported by substantial evidence because Plaintiff does not meet the requirements of Listing 12.05C; and (2) sufficient medical evidence supports the Commissioner's RFC finding. Therefore, the Court must affirm the decision of the ALJ that Plaintiff is not disabled.

### A. Plaintiff's Credibility

Before discussing the issues articulated above, this Court will analyze the ALJ's treatment of Plaintiff's credibility, because that question is inextricably intertwined with many, if not all, of the issues raised by the parties.

In evaluating Plaintiff's credibility regarding the extent of his symptoms, the ALJ was required to: (1) determine whether there is an underlying medically determinable physical or mental impairment that can reasonably be expected to produce his symptoms; and then (2) evaluate Plaintiff's allegations concerning severity by using objective medical evidence, and the factors laid out in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

The factors identified in Polaski include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his symptoms; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment and measures other than medication the plaintiff has received; and any other factors concerning his impairment-related limitations. See id. at 1322. An ALJ is not required to discuss each Polaski factor and how it relates to a plaintiff's credibility. See Partee v. Astrue, 638 F.3d at 860, 865 (8th Cir. 2011) (stating that "[t]he ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting a [plaintiff's]

subjective complaints"); Samons v. Astrue, 497 F.3d 813, 820 (8th Cir. 2007) (stating that "we have not required the ALJ's decision to include a discussion of how every Polaski factor relates to the [plaintiff's] credibility").

This Court reviews the ALJ's credibility determination with deference and may not substitute its own judgment for that of the ALJ. "The ALJ is in a better position to evaluate credibility, and therefore we defer to [the ALJ's] determinations as they are supported by sufficient reasons and substantial evidence on the record as a whole." Andrews, 791 F.3d at 929 (citing Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)). See also Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination"). In this case, the ALJ gave good reasons for discounting Plaintiff's credibility. Accordingly, the Court will defer to the ALJ in this regard.

First and foremost in this case, the ALJ identified several instances in which Plaintiff's testimony during the hearing was in direct and significant conflict with other objective medical information. See Simmons v. Massanari, 264 F.3d 751, 756 (8th Cir. 2001) (holding that substantial evidence supported discounting a plaintiff's credibility where the plaintiff had a history of lying and giving conflicting statements). For example, Plaintiff claims that "it's been about two or three years" since he was in a bar. (Tr. 37) Yet medical records show that he was arrested for a "bar brawl" only six months earlier. (Tr. 40, 586) ("Patient was picked up by police in a bar brawl.") Also, Plaintiff denies substance abuse issues, but medical records show that he often presented to emergency rooms under the influence of alcohol, and tested positive for opiate drugs. (Tr. 579) (alcohol and drugs in Plaintiff's system); (See also Tr. 587) (noting that Plaintiff admits to having "82 cans of beer per week" and 12 beers per night "for years")

Similarly, Plaintiff claimed not to have worked as a concrete finisher since 2002, yet multiple medical records suggest that he told hospital staff he was working as a "concrete finisher as recently as 2011." (Tr. 288, 509) When the ALJ questioned Plaintiff about these inconsistencies, and others, Plaintiff merely claimed he could "not recall" whether he was working, and that he had "no idea where all this job stuff" comes from. (Tr. 31-32) A fair reading of the record in this case confirms the ALJ's conclusion that Plaintiff continued to work, despite his claims of disability.[4] The inconsistencies between the objective medical records and Plaintiff's testimony supply more than substantial evidence to discount Plaintiff's credibility.

Additionally, the ALJ considered several of the Polaski factors in discounting Plaintiff's credibility. For instance, Plaintiff failed to seek treatment from a psychiatrist for his purportedly severe anxiety attacks, and he failed to keep follow up appointments as directed by emergency room staff. (Tr. 332) See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (holding that an ALJ is properly entitled to discount a plaintiff's credibility for failure to seek medical attention).

Finally, the objective medical evidence does not support Plaintiff's assertions of disabling limitations. Indeed, the objective medical evidence, as noted above, includes dozens of tests, all of which came up normal. (See Tr. 457) (noting that "Patient has had about 20 chest x-ray[s]" and CT scans within the few last years, "but all [have] been negative including his lab work for these same symptoms") The lack of objective medical evidence is a proper basis upon which to discount Plaintiff's assertions of disability. Ford v. Astrue, 518 F.3d 979, 982 (8th Cir. 2008).

The ALJ's treatment of Plaintiff's credibility satisfies the requirements of Polaski. The ALJ used the correct analysis, and substantial evidence supports his findings. Thus, it is entitled to deference by this Court. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) ("Where adequately explained and supported, credibility findings are for the ALJ to make.").

---

[4] The ALJ characterized Plaintiff as working in the "underground economy." (Tr. 19)

9

**B. Listing 12.05C**

Plaintiff's first argument for reversal is that he meets the requirements for Listing 12.05C. In order to meet Listing 12.05C, Plaintiff must establish: "(1) a valid verbal, performance, or full scale IQ score of 60 through 70, (2) an onset of the impairment before age 22, and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." Hesseltine v. Colvin, 800 F.3d 461, 464 (8th Cir. 2015) (internal quotation marks and citation omitted). Additionally, Plaintiff must meet the standard laid out in the introductory paragraph to Listing 12.05, which requires "significantly sub-average general intellectual functioning with deficits in adaptive functioning." Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006).

The Commissioner argues that Plaintiff has failed to prove that he has the requisite deficits in adaptive functioning. (ECF No. 17 at 3) In support of her argument, the Commissioner points to the significant amount of evidence that Plaintiff was working "off the books." (ECF No. 17 at 4) This Court agrees that there is ample evidence in the record that Plaintiff was working, and that Plaintiff's ability to work seriously undercuts his alleged limitations in adaptive functioning. See Miles v. Barnhart, 374 F.3d 694, 699-700 (8th Cir. 2004) (holding that plaintiff did not prove the requisite limitations in adaptive functioning where she was working). There are several pieces of evidence which support this finding that Plaintiff was working.

First, there are multiple references in the medical records to Plaintiff's employment when he showed up to emergency rooms. (See, e.g., Tr. 590) (noting that Plaintiff reported to St. Clare's emergency room staff that he "pour[ed] concrete for a living, and used both hands to lift heavy concrete") As discussed above, the ALJ properly discounted Plaintiff's credibility when

Plaintiff denied working. In fact, the ALJ confronted Plaintiff with multiple, documented references to his working, and Plaintiff had no credible response. This evidence of work demonstrates a lack of limitation in adaptive functioning. See Miles, 374 F.3d at 699-700.

Additionally, this Court finds that objective medical evidence supports a finding that Plaintiff does not suffer from limitations in adaptive functioning. As noted above, Plaintiff visited numerous emergency rooms, on a regular basis, and had multiple tests done, including x-rays, CT scans, and EKG tests, and all results came back normal. Furthermore, a psychiatric exam done on January 20, 2013 found Plaintiff's memory, affect, and judgment normal, and his new learning ability was normal. (Tr. 575) Also, the school records indicate Plaintiff had no physical, speech, or language conditions hindering his academic ability. (Tr. 144)

Furthermore, the ALJ found that Plaintiff only has mild restrictions in the activities of daily living, moderate difficulties in social functioning, and mild difficulties with regard to concentration, persistence or pace. (Tr. 13-14) Such minor findings suggest no material limitations in adaptive functioning. See Johnson v. Colvin, 788 F.3d 870, 873 (8th Cir. 2015) (holding that substantial evidence supports a finding that a plaintiff with a Full Scale IQ score of 67 does not have limitations in adaptive functioning where she could read, write, count change, perform household tasks, and had normal concentration and thought process).

The Court agrees with these findings by the ALJ of mild and moderate restrictions, primarily because most of the evidence concerning the severity of Plaintiff's limitations in these areas comes from his own testimony, and as discussed above, Plaintiff's credibility is properly discounted. Also, Plaintiff admits that he has "no problem" with issues of personal care, is capable of shopping, and can properly count change, use a checkbook and handle a savings account. (Tr. 174-76) Also, the Court finds it relevant that in Plaintiff's function report, he

mostly discusses how unspecified "pain" makes him disabled, but he alleges no shortcomings in understanding, following instructions, memory, or concentration, even though the theory of his disability has now changed to be one of mental impairment, not pain. (Tr. 176) When he was filling out the function report, however, he did not allege significant mental impairments.

These admissions, along with the evidence of mild restrictions in the activities of daily living, demonstrate that Plaintiff does not have deficits in adaptive functioning sufficient to meet Listing 12.05C. See also Cheatum v. Astrue, 388 Fed.Appx. 574, 576-77 (8th Cir. 2010) (unpublished per curiam) (concluding a petitioner diagnosed with borderline intellectual functioning who could do light housework, prepare meals, and care for her ailing parents did not have deficits in adaptive functioning).

Finally, it is relevant that that no physicians ever recommended significant restrictions on Plaintiff's activities. (Tr. 19) This indicates a lack of limitations in adaptive functioning.[5]

Alternatively, it is not clear that Plaintiff even meets the criteria of Listing 12.05C concerning IQ scores. The IQ test Plaintiff relies on is outdated. According to the Commissioner's regulations, "IQ test results must also be sufficiently current for accurate assessment …. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above." See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(D)(10). Plaintiff relies on test results are from 1993, when he was 12 years old, and thus, are not "sufficiently current" under the Commissioner's regulations. See id.

---

[5] Additionally, it is not clear that Plaintiff's behavior before the age of 22 demonstrated a sufficient limitation in adaptive functioning. Although according to the 1997 school report Plaintiff would get "angry" and verbally abusive with others, the evidence also shows that his behavior was "age appropriate." (Tr. 150) There is also evidence that the learning limitations were caused by "distractibility." (Id.) When Plaintiff was placed in an alternative class, he achieved "academic success." (Tr. 144) Because substantial evidence would have supported a finding that Plaintiff did not suffer from adaptive functioning limitations in school, it is not clear that Plaintiff meets the second prong of a 12.05C Listing—that the limitations must manifest themselves before the age of 22.

Furthermore, even if the ALJ could consider the IQ tests from 1993, he was right to discount them. As an initial matter, the Court notes that only one of Plaintiff's scores was below 70, presumptively meeting the first prong of Listing 12.05C—a score of 69 in Performance IQ.[6] As noted above, Plaintiff received a full-scale score of 73, and a verbal IQ score of 81. Moreover, "IQ test scores are properly examined in light of a claimant's daily activities and behavior." Miles v. Barnhart, 374 F.3d 694, 699-700 (8th Cir. 2004). As discussed above, Plaintiff could demonstrate no significant limitations in his adaptive functioning. That fact impacts the weight given to his IQ scores. See Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005) ("An ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior."); see also Johnson v. Barnhart, 390 F.3d 1067, 1071 (8th Cir. 2004) ("While an IQ test is helpful in determining whether an applicant has a mental impairment, it is not the only evidence that may be examined. Other information which indicates an individual's ability to function can be used to discredit the results of the IQ test."). Plaintiff's single score, only marginally within the 60-70 range, from an outdated IQ test, is not sufficient to meet the first prong of Listing 12.05C where it is inconsistent with Plaintiff's adaptive functioning abilities. See Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998) ("An ALJ may reject IQ scores if they are inconsistent with the rest of the record.").

As a final matter, the Court notes that the ALJ's discussion of Plaintiff's alleged cognitive impairment comes at step four of the sequential analysis, as opposed to step three. (Tr. 19) The Court is convinced, however, that this is a mere "arguable deficiency in opinion-writing," which does not affect the validity of the ALJ's ultimate decision, because the analysis that the ALJ undertook in step four is the same analysis that would have been undertaken at step

---

[6] Where multiple scores are given within an IQ test—such as a test resulting in verbal, performance, and full-scale IQs—the Commissioner uses the lowest score. Phillips v. Colvin, 721 F.3d 623, 630 (8th Cir. 2013).

three. Furthermore, it is clear that, for the reasons stated above, Plaintiff does not meet the standards for disability under Listing 12.05C. See Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004) (quoting Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ("We will not set aside an administrative finding based on an 'arguable deficiency in opinion-writing technique' when it is unlikely it affected the outcome."). While the Court recognizes that the ALJ should have explicitly discussed the IQ and adaptive functioning evidence in the context of a step three analysis, the Court may look to the entirety of the ALJ's decision to determine if he properly considered Plaintiff's allegations of mental impairment under Listing 12.05C. See Wiese v. Astrue, 552 F.3d 728, 733-34 (8th Cir. 2009) (explaining that a court may look to the entirety of the ALJ's decision to determine if the ALJ properly considered the claimant's claim). When viewed in its entirety, it is clear that the ALJ's decision considered and rejected Plaintiff's allegations that he suffered from intellectual impairments.[7] Thus, this "arguable deficiency" in opinion-writing is harmless error here.[8] The outcome of this matter would not change.

### C. Medical Evidence Supporting the RFC

Plaintiff's second argument is that the ALJ did not support his RFC determination with sufficient medical evidence, in violation of Singh v. Apfel, 222 F.3d 448 (8th Cir. 2000) and Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001). The Commissioner argues that sufficient medical evidence supports the RFC. (ECF No. 17 at 9)

---

[7] See, e.g., Tr. 19 ("The undersigned has considered the contention of the claimant's representative that the claimant has an IQ of 70 or below and that this 'would render [the claimant] incapable of engaging in sustained, substantial, gainful activity….[t]he undersigned finds that the claimant has no intellectual deficit that would impact more than minimally on his ability to engage in a wide range of work.")

[8] As another alternative ground, this Court notes that it is Plaintiff's burden to prove he is disabled. Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). It is also Plaintiff's burden to prove that he meets all the elements of a Listing. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004) ("The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing."). For the reasons stated in this opinion, Plaintiff has not carried the burden of proof that he meets Listing 12.05C.

"RFC is defined as the most a claimant can do despite his or her physical or mental limitations." Martise , 641 F.3d at 923 (internal quotations omitted). "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC …. However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." Id.

Plaintiff cites Singh and Lauer for the proposition that an RFC finding is a medical determination, and that the RFC must be based on at least *some* medical evidence. See Singh, 22 F.3d at 451 ("[Plaintiff's RFC] is a medical question."); Lauer, 245 F.3d at 704 ("[S]ome medical evidence must support the determination of [Plaintiff's] RFC."). As explained below, the ALJ did in fact adduce sufficient medical evidence to fashion an RFC.[9]

First, as it relates to Plaintiff's physical impairments, the ALJ reviewed and cited numerous medical records from Plaintiff's emergency room visits. (Tr. 16-18) The ALJ noted that test results from these visits were uniformly normal. This led the ALJ to conclude that there were no material functional limitations resulting from Plaintiff's severe impairment of costochondritis[10] or from any other identifiable physical source. Because there is no substantial evidence in the record to support more restrictive exertional limitations, the ALJ's finding that Plaintiff can perform medium work is supported by substantial evidence.

Second, the ALJ properly used non-medical evidence in accordance with the regulations. See 20 C.F.R. § 416.945(a)(3) (noting that the Commissioner will assess RFC "based on all of the relevant medical and other evidence"). For example, the ALJ considered the old school records, Plaintiff's testimony concerning his difficulties in social interactions, and the medical

---

[9] As noted earlier, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 CFR 416.967(c), with a non-exertional limitation that his work not involve more than occasional interaction with the public. (Tr. 14)

[10] Costochondritis is an inflammation of the cartilage connecting a rib to the sternum.

15

records to find that Plaintiff should only occasionally work with the public.  The ALJ properly reviewed, analyzed, and incorporated several non-medical sources into his conclusions as they were relevant.  These sources constitute substantial evidence supporting the RFC conclusion regarding non-exertional limitations.

Finally, the Court notes that even where an ALJ has, in fact, failed to develop the record, that failure itself is not sufficient to warrant remand.  In order to remand because of an inadequately developed record, Plaintiff must demonstrate both:  (1) failure to develop the record; and (2) unfairness or prejudice from that failure.  Haley v. Massanari, 258 F.3d 742, 749-50 (8th Cir. 2001).

In this case, even if the Court were to assume that the ALJ failed to develop the record, Plaintiff has demonstrated no unfairness or prejudice.  This is because substantial evidence supports a conclusion that Plaintiff's intellectual impairment does not meet Listing 12.05C.  Indeed, the ALJ found that Plaintiff continued to work "off the books," even though he claimed to be completely disabled.  Substantial evidence supports that finding.  Plaintiff worked as a concrete finisher, continued to drink to excess, and engaged in a bar room brawl—all during a time he claimed to be unable to engage in gainful activity.  Thus, even a valid claim that the ALJ failed to adequately develop the record in this case would amount to no more than harmless error because Plaintiff cannot show any unfairness or prejudice.  Substantial evidence supports the ALJ's decision that Plaintiff is not disabled.

## V. <u>Conclusion</u>

For all of the foregoing reasons, Plaintiff's arguments that the ALJ erred are unavailing. The ALJ thoroughly evaluated the evidence in this case, and gave Plaintiff a full and fair hearing. The ALJ's conclusions in this matter are supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter be AFFIRMED.

A separate Judgment shall be entered this day.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of December, 2015